## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

      *Plaintiff,*

vs.                                        Case No. 13-CR-10057-EFM

MANJUR ALAM,

      *Defendant.*

## MEMORANDUM AND ORDER

In 2013, Defendant Manjur Alam pleaded guilty to one count of conspiracy to commit wire and bank fraud for his involvement in a mortgage-fraud scheme. The Court sentenced him to a prison term of 72 months, to be followed by five years of supervised release, and ordered him to pay $258,309.21 in restitution. Alam seeks to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Doc. 176). He asserts that his sentence is unlawful because (1) he received ineffective assistance of trial counsel in violation of the Sixth Amendment, (2) he received ineffective assistance of appellate counsel in violation of the Sixth Amendment, and (3) his right to a fair trial under the due process clause of the Fifth Amendment was violated as a result of the Government's failure to disclose victim statements under 18 U.S.C. § 3664.

Upon review, Alam's motion is denied in part, as identified below. The Court orders the parties to submit briefing on Alam's allegation that trial counsel withheld evidence from the Government.

## I.    Factual and Procedural Background

In 2006, Alam was convicted of conspiracy to defraud the U.S. Department of Housing and Urban Development and received 12 months' probation. Between 2006 and April 2008, including while on probation, Alam developed a new fraudulent scheme. Under the scheme, unqualified buyers submitted home-loan applications containing false representations and Alam provided false supporting documentation, including letters of credit and verifications of rent. Foreclosure proceedings commenced after the buyers defaulted. The lenders bid on the properties at the sheriff's sales and then sold the properties for less than the outstanding balances.

Alam was originally indicted on March 26, 2013. On April 23, 2013, Alam and six co-defendants were charged by a ten-count superseding indictment. Roger Falk and James McIntyre with the Law Office of Roger L. Falk, P.A. represented Alam in the criminal proceedings before the Court.[1] On November 5, 2013, Alam pleaded guilty to count one of the superseding indictment, conspiracy to commit wire fraud and bank fraud in violation of 18 U.S.C. § 1349 and 18 U.S.C. § 1343. In accordance with the plea agreement, the Government moved to dismiss the remaining nine counts.

Trial counsel submitted 35 objections to the draft presentence investigation report ("PSR") prepared by the United States Probation Officer ("USPO") assigned to Alam's case.[2] After the USPO filed the report with the Court on March 28, 2014, counsel filed a 30-page brief

---

[1] Although also represented by McIntyre, Falk is the focus of Alam's allegations.

[2] Doc. 116, p. 3.

containing 13 objections to the PSR, as well as a 35-page sentencing memorandum, a reply to the Government's sentencing memorandum, and a reply to the Court's request for additional information.[3]  Most of this briefing focused on the proper method for calculating loss, and the ultimate calculation of the amount of loss.  The amount of loss was the most significant factor affecting the total offense level and the sentencing range under the U.S. Sentencing Guidelines ("Guidelines").

The Court held an evidentiary hearing on April 21, 2014, regarding determination of the proper amount of loss.  In the briefing and at the hearing, defense counsel objected to the losses as computed in the PSR, the loss calculation method advanced by the Government, the evidence submitted by the Government in support of its calculations, and the allegedly improper inclusion of certain homes in the loss calculation.[4]  Counsel proposed alternative methods for calculating loss in order to achieve a lower total offense level, and objected to the Government's evidence of loss as unreliable, inadmissible, and a denial of Alam's right to confront witnesses.

Following Tenth Circuit precedent, the Court determined "that actual loss is the amount of money owed to each lending institution as of the dates the borrowers defaulted on their payments" and the "credit against loss is the amount each property ultimately sold for."[5]  The Court rejected all of the defense's alternate loss calculation methods and, aside from sustaining two objections reducing the calculation of loss, largely overruled the defense's remaining objections as legally flawed or meritless.[6]

---

[3] *See* Docs. 123, 124, 128, & 131.

[4] *See* Docs. 123, 124, 128, 131, & 155.

[5] Doc. 129, p. 1.

[6] *Id.*; Doc. 132.

After reviewing the parties' arguments and evidence, the Court adopted the figures summarized by the Government in Doc. 130-1, with two reductions reflecting Alam's objections that were sustained. It determined the total amount of loss as $485,192.70 and the total offense level as 22. The Court found the amount of loss associated with each property as follows:[7]

Amount of loss for properties included as part of the convicted offense:
- 1244 S. Emporia          $28,479.46
- 2208 S. Glendale         $39,589.99
- 2050 Santa Fe            $39,739.52
- 8431 Hildreth            $53,568.16[8]
- 1044 S. Sedgwick         $31,758.10
- 2431 S. Lulu             $40,994.69
- 1510 N. Market           $57,042.00

Amount of loss for properties considered as relevant conduct:[9]
- 354 S. All Hallows St.   $16,912.23
- 1901 E. Gary             $40,112.00
- 2664 Classen             $44,541.42
- 1118 S. Laura            $31,500.00
- 735 S. Elizabeth         $13,200.00[10]
- 5600 S. St. Francis      $47,755.13

The Court also informed the parties that it was considering an upward variance, and directed that any objections to its memorandum include no more than five double-spaced pages and be filed by July 30, 2014. Defense counsel timely submitted a five-page response,

---

[7] These figures represent the amounts the Court found were owed at the time of default, less the amounts received from third parties after the lenders obtained the properties at the sheriff's sales and sold them to third parties. *See* Doc. 130-1.

[8] The Court reduced the amount of default by $1,877.87 in accordance with representations made by Alam that the amount presented by the Government did not reflect payments totaling $1,877.87. Doc. 132, p. 9.

[9] The Court only considered these properties for purposes of determining the total offense level. Alam was aware that properties not included as part of the convicted offense would be considered for purposes of sentencing in accordance with U.S.S.G. § 1B1.3. *See* Doc. 87, p. 3.

[10] The Court sustained Alam's objection and changed the default amount from $56,650.55 to $43,200, reducing the total amount of loss by $13,450.55. Doc. 132, p. 10.

incorporating by reference the issues raised in prior objections, memoranda, responses, and replies, and offering new arguments against a sentence above the recommended range.

On August 11, 2014, the Court held a sentencing hearing and exercised its discretion to sentence Alam to a 72-month term of imprisonment, above the Guidelines' recommended range of 46-57 months, and five years of supervisory release. The Court also ordered restitution in the total amount of $258,309.21.

David Moses of Moses & Pate, L.L.C. represented Alam in his appeal. On appeal, counsel argued that the Court utilized an erroneous loss determination methodology that resulted in a higher loss, total offense level, and recommended sentencing range, and that the Court abused its discretion in varying upward from the recommended range.

On August 14, 2015, the United States Court of Appeals for the Tenth Circuit affirmed Alam's sentence. The Tenth Circuit relied on *United States v. Washington*,[11] which also involved a scheme to purchase real estate in Kansas using fraudulently obtained mortgages, and held that "[w]here a lender has foreclosed and sold the collateral, the net loss should be determined by subtracting the sales price from the outstanding balance on the loan."[12] The Tenth Circuit rejected Alam's arguments for a more favorable loss calculation methodology, and found that the Court "did not abuse its discretion in varying upward."[13] The Supreme Court denied certiorari review on April 4, 2016.[14]

---

[11] 634 F.3d 1180 (10th Cir. 2011).

[12] *United States v. Alam*, 622 F. App'x 742, 744 (10th Cir. 2015) (quoting *Washington*, 634 F.3d at 1184).

[13] *Id*. at 744-45.

[14] *Alam v. United States*, 136 S.Ct. 1534 (2016).

Proceeding pro se, Alam filed the current motion under 28 U.S.C. § 2255 on March 30, 2017. Alam's motion alleges that he received ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and that the Government violated his due process rights by failing to disclose victim statements under 18 U.S.C. § 3664. Alam attached 166 pages of background and legal argument to his motion, filed a 74-page reply to the Government's response, and filed over 100 pages of exhibits.[15] A review of the current briefing, as well as the record and files of this case, conclusively shows that Alam is not entitled to relief on the issues decided below. Alam's motion to vacate is denied in part, and further briefing is ordered regarding Alam's allegation that trial counsel withheld evidence from the Government.

## II.    Legal Standards

Title 28 U.S.C. § 2255 allows a "prisoner in custody . . . claiming the right to be released" to petition the court to vacate, set aside, or correct a sentence on various grounds, including where "the sentence was imposed in violation of the Constitution or laws of the United States."[16] A § 2255 motion is not an avenue for parties to challenge the proper calculation of restitution where those calculations did not also affect the prison sentence.[17] When alleging constitutional error, "the petitioner must establish an error of constitutional magnitude which had

---

[15] The Court has thoroughly and carefully reviewed Alam's briefing and construes his filings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). To the extent the Court does not address an alleged wrongdoing it is because the allegation cannot support a claim of ineffective assistance of counsel, either because it is illogical, because it cannot possibly be viewed as unreasonable, or because Alam does not attempt to show prejudice. For example, Alam criticizes counsel for allowing the indictment to include allegedly false statements. This allegation wholly fails to state a claim for ineffective assistance of counsel.

[16] 28 U.S.C. § 2255(a).

[17] *See United States v. Hardesty*, 1997 WL 815381, at *8 (D. Kan. 1997) (noting that § 2255 "is not a proper vehicle to bring claims of improper restitution sentences, even when such claims are tainted by the alleged ineffective assistance of counsel"). The Court recognizes that in some cases the amount of restitution may simply equal the amount of total loss, and thus arguments attacking restitution also inherently attack the amount of loss. That, however, is not the case here where the Court separately determined the amount of loss for each property and then adopted the restitution ordered in the co-defendants' cases for the amount of Alam's restitution order.

a substantial and injurious effect or influence on the verdict."[18]     When alleging non-constitutional error, "the petitioner must show a fundamental defect in the proceedings resulting in a complete miscarriage of justice or an error so egregious that it amounted to a violation of due process."[19]  The petitioner is entitled to a hearing on his motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[20]

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding.' "[21]  This includes when a defendant pleads guilty, during sentencing proceedings, and on the first appeal as of right.[22]  The Supreme Court established a two-prong test to evaluate whether a defendant received ineffective assistance of counsel in *Strickland v. Washington*.[23]  Under this test, the defendant bears the burden of showing that he received ineffective assistance of counsel and "must show [1] that counsel's representation 'fell below an objective standard of reasonableness' and [2] that he was prejudiced as a result."[24]  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."[25]  "To be entitled to a hearing on this claim," the petitioner "must have alleged facts which, if proven, would establish he received

---

[18] *United States v. Johnson*, 995 F. Supp. 1259, 1261 (D. Kan. 1998) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[19] *Id*. (citing *Reed v. Farley*, 512 U.S. 339, 353-54 (1994)).

[20] 28 U.S.C. § 2255.

[21] *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) (quoting *Lafler v. Cooper*, 566 U.S. 156, 165 (2012)).

[22] *See id*.; *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *United States v. Lustyik*, 833 F.3d 1263, 1267 (10th Cir. 2016).

[23] 466 U.S. 668 (1984)

[24] *Lee*, 137 S. Ct. at 1964 (quoting *Strickland*, 466 U.S. at 688).

[25] *Strickland*, 466 U.S. at 700.

ineffective assistance of counsel."[26]  The Court, however, is "not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim."[27]

In evaluating whether counsel's representation fell below an objective standard of reasonableness, "substantial deference must be accorded to counsel's judgment."[28] Counsel retains "wide latitude . . . in making tactical decisions," and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[29]  "[T]he defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."[30]  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[31]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[32]  "This requires that '[t]he likelihood of a different result must be substantial, not just conceivable.' "[33]

---

[26] *Lasiter v. Thomas*, 89 F.3d 699, 703 (10th Cir. 1996).

[27] *United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012).

[28] *Premo v. Moore*, 562 U.S. 115, 126 (2011).

[29] *Strickland*, 466 U.S. at 689 (citations omitted).

[30] *Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008) (citations omitted).

[31] *Strickland*, 466 U.S. at 694.

[32] *Cannon v. Trammell*, 796 F.3d 1256, 1271 (10th Cir. 2015) (quoting *Strickland*, 466 U.S. at 694).

[33] *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)) (alteration in original).

# III.    Analysis

Alam's § 2255 motion argues that he received ineffective assistance of trial counsel, he received ineffective assistance of appellate counsel, and the Government failed to disclose victim statements pursuant to 18 U.S.C. § 3664.  The Court addresses each argument below.

## A.    Alam received effective assistance from trial counsel.

Alam dedicates the bulk of his motion to arguing that he did not receive effective assistance from trial counsel.  Generally, his allegations either attack his decision to plead guilty or counsel's actions or inactions relating to sentencing.  He further contends that the cumulative effect of the representation constitutes ineffective assistance of counsel.

Several of Alam's arguments require the Court to ignore prior representations that Alam made under oath.  Thus, as a preliminary matter, the Court first addresses Alam's contention that he did not voluntarily enter into the plea agreement and his request that we ignore his prior representations and statements made in connection with the plea agreement, petition to enter the plea agreement, and change of plea hearing.

### 1.    *Alam cannot show that he entered the plea agreement involuntarily or that the plea agreement contains false information or representations.*

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' "[34]  The "burden to show that his guilty plea was not knowing or voluntary" rests on the defendant.[35]  "[C]oercion by the accused's counsel can render a plea involuntary."[36]  A guilty

---

[34] *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

[35] *United States v. Jim*, 786 F.3d 802, 810 (10th Cir. 2015).

[36] *Fields v. Gibson*, 277 F.3d 1203, 1213 (10th Cir. 2002) (quoting *United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir. 1988)) (alteration in original).

plea also may be involuntary if "an attorney materially misinforms the defendant of the consequences of the plea," falsely alleges "that promises or guarantees exist," or "if counsel informs the defendant that he has no choice, he must plead guilty."[37]  "[S]trong urging" does not invalidate a guilty plea.[38]  When a guilty plea is entered based on advice of counsel, its voluntariness "depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' "[39]

Alam claims that counsel threatened that Alam's wife would be indicted if he did not plead guilty, and that counsel advised him to plead guilty based on impermissible factors and without learning the facts of the case.  These allegations conflict with Alam's prior representations and affirmations under oath, which he has failed to sufficiently contest.

The "colloquy between a judge and a defendant before accepting a guilty plea is not pro forma and without legal significance.  Rather, it is an important safeguard that protects defendants from incompetent counsel or misunderstandings."[40]  Statements made by a defendant at the plea hearing "carry a strong presumption of verity," and ordinarily may not be repudiated.[41]  Although there is no *per se* rule rendering a defendant's statements "uniformly invulnerable to subsequent challenge,"[42] representations made by the defendant, his lawyer, and the Government, "as well as any findings made by the judge accepting the plea, constitute a

---

[37] *Id*. (citations omitted).

[38] *Id*. at 1214.

[39] *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

[40] *Fields*, 277 F.3d at 1214.

[41] *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

[42] *Id*. at 73-74.

formidable barrier in any subsequent collateral proceeding."[43]   A later attack on the voluntary nature of a defendant's guilty plea "is subject to summary dismissal" if the petitioner merely asserts "conclusory allegations unsupported by specifics" or "contentions that in the face of the record are wholly incredible."[44]   A defendant seeking to repudiate prior sworn statements is entitled to "an evidentiary hearing only in the most extraordinary circumstances."[45]

Until this motion, Alam repeatedly represented that he voluntarily chose to plead guilty after consultation with his attorney regarding the facts of the case.   His current assertions are conclusory, unsubstantiated, and wholly incredible in light of the record.   Nothing in the briefing, record, or files in this case supports Alam's claims and there is no valid, believable reason to justify a departure from his prior representations.[46]

        a.    Coercion

Alam's brief alleges that trial counsel threatened that Alam's wife would be indicted if he did not plead guilty, that pleading guilty "was an act singularly aimed at minimizing the 'damage' " to his wife, and that "[b]ut for the coercion, it is a reasonable probability, if not a certainty," that he "would not have agreed to the terms of the plea agreement."[47]

Alam's prior representations plainly state that he was not threatened or coerced.   The plea agreement, signed by Alam, explicitly "acknowledges that he has read the plea agreement,

---

[43] *Id*.

[44] *Id*. at 74.

[45] *Id*. at 80 n.19.

[46] *See Hedman v. United States*, 527 F.2d 20, 22 (10th Cir. 1975) ("We believe that the district court in the case was not required to conduct an evidentiary hearing when appellant's allegations merely contradicted his earlier statements" and there was no "believable, valid reason justifying a departure from the apparent truth of his Rule 11 statements.") (citations omitted).

[47] Doc. 176-5, pp. 5, 13-14.

understands it and agrees it is true and accurate and *not the result of any threats, duress or coercion,*" and that he "is entering into this agreement and is pleading guilty because [he] is guilty and is doing so *freely and voluntarily.*"[48]  Alam swore that he offered his plea "freely and voluntarily," and that he "read, understood, and discussed with [his] attorney, each and every part of [the] Petition to Plea Guilty, and that the answers which appear in every part of [the] Petition are true and correct."[49]  Likewise, when asked by the Court if it was his decision to plead guilty, Alam responded with an unwavering, "Yes."[50]

Not only do Alam's recent allegations contradict his sworn statements, but they also conflict with other allegations he makes in the same brief.  Alam claims that he "agreed to plea guilty" in May 2013, and instructed counsel to negotiate a plea agreement at that time.[51]  The alleged threat to his wife did not occur until October 2013.[52]  It is illogical that Alam agreed to plead guilty and instructed counsel to negotiate a plea agreement in May based on a threat that had not yet been made.  While a defendant may change his mind before actually pleading guilty, nothing in the record suggests that Alam had such a change of heart and Alam does not make such an allegation.  Alam offers only unsubstantiated, conclusory allegations, which, based on the record, are also wholly incredible.  Accordingly, this claim is subject to summary dismissal.[53]

---

[48] Doc. 87, p. 10 (emphases added).

[49] Doc. 86, p. 6.

[50] Doc. 154, pp. 13-14.  The Court found that Alam "made his plea freely, voluntarily and because he is guilty as charged; and not out of ignorance, fear, inadvertence or coercion; and with a full understanding of its consequences." *Id*. at 17.

[51] Doc. 176-4, p. 3.

[52] *Id*. at 5 (alleging that threat to wife occurred on October 15, 2013).

[53] Additionally, Alam has failed to assert facts sufficient to meet the prejudice prong of *Strickland*.  *See Hill*, 474 U.S. at 58.  He cannot show that there is a reasonable probability that but for the alleged threat to his wife, he would not have pleaded guilty and would have insisted on going to trial.  *See id.; Lee*, 137 S. Ct. at 1965.

b.    Advising Alam to plead guilty

Alam contends that counsel failed to properly investigate the charges, review discovery, or interview him regarding the facts of the case before advising him to plead guilty.  Instead, he contends that counsel advised him to plead guilty on the day he was retained based on conviction rates for federal indictments, Alam's prior conviction for similar conduct, and the potential consequences if found guilty at trial.  Alam claims that but for this advice, it is reasonably probable that he would not have pleaded guilty and would have insisted on going to trial.[54]

Alam's sworn statements, as well as the briefing and oral argument in this case, demonstrate the wholly incredible nature of his assertion that counsel *never* interviewed him about the facts of the case.[55]  Alam swore: "I told my lawyer all the facts and circumstances known to me about the charges made against me in the Superceding [sic] Indictment filed herein," "I believe that my lawyer is fully informed on all such matters," "I read the Superceding [sic] Indictment and have discussed it with my lawyer," "I fully understand every charge made against me," and "[m]y lawyer has counseled and advised me on the nature of each charge, on all lesser included charges, and on all possible defenses that I might have in this case."[56]  He also swore to the truth of the factual basis described in the plea agreement and repeated in the

---

[54] Doc. 176-4, p 8.  Although the Court finds that Alam entered the plea agreement voluntarily, Alam has also failed to assert facts sufficient to show prejudice under *Strickland*.  "[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill*, 474 U.S. at 59.  Alam presents no facts that would suggest counsel would have changed his recommendation.  At various points in his briefing, Alam alleges that counsel failed to investigate and failed to interview his business partners.  According to Alam, had counsel interviewed his business partners counsel would have learned that they were not recruited.  Not only did Alam admit to recruiting his business partners, but five of Alam's co-defendants had previously represented that Alam recruited them.  *See* Docs. 69, 71, 75, 78, & 82.

[55] Doc. 176-4, p. 21 (claiming he "was never interviewed by either one of counsels as to the facts of the case before, or after, he was advised to plea guilty").

[56] Doc. 86, pp. 1, 3.

petition.[57]  At the plea hearing Alam told the Court that he had sufficient time to discuss his case with counsel, he was satisfied with his counsel's handling of the case, he had "carefully gone over and discussed" the factual basis for the guilty plea with his counsel, and the factual basis for the guilty plea "accurately state[d] what happened and what [Alam] did."[58]  Alam did not question the accuracy of any part of the plea agreement, question the consequences of his guilty plea, appear in any way confused, or hesitate before pleading guilty.  Alam has failed to assert facts sufficient to surmount the "formidable barrier" created by his prior sworn representations.[59]

Alam's contention that trial counsel did not review discovery is similarly contradictory and unsupported by the briefing, record, and files in this case.  Alam sometimes claims that counsel *never* reviewed any discovery, but at other times alleges that while counsel reviewed some discovery, he did not spend enough time reviewing discovery.  The attachments submitted by Alam show, at a minimum, that his counsel reviewed at least some discovery, reviewed at least some witness statements, and obtained information relating to at least one co-defendant before Alam pleaded guilty.[60]  A review of the briefing and transcripts from oral argument confirms the incredible nature of Alam's contention that counsel never investigated or discussed the facts of the case with Alam.[61]

Alam unpersuasively argues that his decision to plead guilty should be set aside because counsel advised that Alam likely would be found guilty at trial because of his prior conviction

---

[57] *Id.* at 2-3.

[58] Doc. 154, pp. 2, 8.

[59] *See Blackledge*, 431 U.S. at 74.

[60] *See* Doc. 176-6.

[61] Docs. 123, 124, 128, 131, 134, 154, 155, & 156.

for similar conduct and the high conviction rate for federal crimes. Counsel also advised that Alam would likely receive a harsher sentence if found guilty at trial. Alam contends that he decided to plead guilty based on these impermissible factors. The Federal Rules of Evidence allow the presentation of evidence of prior crimes under certain circumstances; accordingly, it is reasonable to consider past crimes of a similar nature.[62] The conviction rate for federal indictments is information a defendant would likely want to know; regardless, it is not unreasonable to share that information in discussing a potential plea.[63] Finally, Alam was indicted on ten counts, with the single count he pleaded guilty to alone carrying a 30 year maximum sentence.[64] Thus, Alam could have received a much harsher sentence had he proceeded to trial. Trial counsel did not act unreasonably.

    2.    *Counsel did not unreasonably fail to negotiate a more favorable plea agreement.*

Alam claims that he "would likely not have agreed to the terms of the plea agreement regarding the amount of loss" had trial counsel provided him effective assistance of counsel. He cites numerous actions counsel should have taken to obtain a more favorable plea agreement.[65] Alam appears to be confusing the plea agreement, which contained no specific terms relating to the amount of loss, with the PSR, which went into great detail on the amount of loss. The plea agreement does not include specific terms regarding "the amount of loss," but rather, specifically

---

[62] *See* Fed. R. Evid. 404(b) (addressing when evidence of prior crimes is admissible).

[63] *United States v. Ferguson*, 360 F. App'x 969 (10th Cir. 2010) (vacillating on whether to plead guilty after being told rate of conviction was 98% did not render subsequent guilty plea involuntary).

[64] Doc. 176-4, p. 3. Alam claims that "going to trial meant 23 sentencing guideline points and a possible prison term of 51-63 months," and thus his counsel incorrectly advised that he would get "hammered" if he went to trial and was found guilty. Doc. 182-1, p. 71. This argument fails to recognize that that maximum sentence that could be imposed if found guilty of Count 1 was 30 years in prison, or that he could also be found guilty on the remaining nine counts that were dismissed when he pleaded guilty.

[65] Doc. 176-4, p. 19.

reserves the right for Alam "to present argument and evidence on the proper loss value" and the right to "appeal any loss amount determined by the Court."[66]  Alam cannot attack the validity of his guilty plea based on his subsequent unfavorable sentence, and he understood that if he received a sentence he did not like, he could not withdraw his plea and have a trial.[67]  Nothing in Alam's contentions or the record in this case supports a finding that trial counsel's conduct fell below an objective standard of reasonableness.

Additionally, Alam has not alleged any "facts that would suggest that his attorney could have successfully negotiated a plea agreement" on more favorable terms, or what those terms would have been.[68]  Because of his failure to allege prejudice adequately, Alam's ineffective assistance of trial counsel claim further lacks "any colorable merit."[69]

> 3.    *Alam's additional arguments attacking the plea agreement are meritless.*

Alam argues that his counsel did not require the Government to prove its allegations before Alam pleaded guilty.[70]  Inherent in the plea process, however, is the agreement that the government is not required to independently prove the elements of the offense and can instead conserve resources because the defendant admits to the factual basis underlying the offense.[71]

Alam contends that counsel advised him to plead guilty to a sentence equal to or higher than a sentence he could have received if he had gone to trial and lost.  First, Alam did not plead

---

[66] Doc. 87, pp. 4, 8.

[67] The Court also confirmed Alam's understanding that counsel "cannot and has not promised you a sentence," and that "if you come in here on the day of sentencing and get a sentence that you don't like, you can't withdraw your plea and have a trial."  Doc. 154, p. 12.

[68] *Moya*, 676 F.3d at 1214.

[69] *Id.*

[70] Doc. 176-4, pp. 12-13.

[71] *See Missouri v. Frye*, 566 U.S. 134, 144 (2012).

guilty to a specific sentence.[72]    Second, Alam's 72-month sentence is below the applicable

maximum sentence of not more than 30 years of imprisonment, and he avoided the risk of a

guilty verdict on the nine dismissed counts.  Counsel did not act unreasonably.

> 4.    *Alam cannot show that trial counsel provided ineffective assistance in the sentencing proceedings.*

Alam makes numerous allegations against trial counsel that he claims support his

ineffective assistance of counsel claim.  The briefing, files, and records in this case conclusively

show that Alam is not entitled to relief on the issues decided below.

> a.    Inclusion of false allegations in the plea agreement, PSR, and Court's Sentencing Memorandum and Rule 32(h) notice

Alam claims that trial counsel allowed false allegations from the indictment to be

repeated in the plea agreement, the PSR, and the Court's Sentencing Memorandum and Rule

32(h) notice.  His allegations do not support a claim for ineffective assistance of counsel.

With regard to the plea agreement, Alam pleaded guilty to the allegations contained in

the plea agreement and swore that the facts contained in the plea agreement are true.  As

discussed above, Alam cannot overcome the presumption of truth attached to these statements.

His contentions relating to the PSR and Court's memorandum are discussed below.

> 1)    PSR

Alam's contentions regarding allegedly false statements in the PSR are meritless.

Counsel did not have control over which allegations the USPO included in the report.  Still,

counsel submitted 35 objections to the draft report, and filed 13 objections with the Court after

---

[72] *See* Docs. 86, 87, & 154.

the report was filed.[73]   The PSR repeatedly recognizes Alam's denial of factual assertions, typically in a footnote.[74]   The alleged inaccuracies without such footnotes are immaterial,[75] previously sworn to be true by Alam,[76] or objected to by counsel.[77]

The defense's 30-page brief objecting to the PSR argued that the total offense level should be lower than reflected in the PSR, which included a base offense level of seven, with two upward adjustments.[78]   The PSR reflected a 12-point adjustment for the amount of loss caused by Alam's participation in the fraudulent scheme and a four-point adjustment for his role as an organizer or leader.[79]   Counsel devoted almost the entire brief to arguing that the 12-point adjustment for loss should be lower.

Alam faults counsel for not also challenging the four-point adjustment and now denies the factual basis for the adjustment—that he recruited co-conspirators or served as a ring leader. Alam, however, admitted under oath to recruiting his co-conspirators, and co-defendants Ginyard, Dykes, Young, Pearson, Sr., and Pelz had previously represented that Alam recruited them.[80]   Counsel did not unreasonably focus the defense's efforts on challenging the actual loss

---

[73] *See* Fed. R. Crim. P. 32 (assigning preparation of PSR to the USPO); Doc. 116, p. 3.

[74] *See* Doc. 121 (recognizing in footnotes 2-7, 9, 12, 13, and 16 issues that Alam denied or challenged).

[75] *See, e.g.*, Doc. 176-4, p. 23 (arguing that his real estate license was suspended at a different time than identified in the PSR).

[76] *See* Docs. 86, 87, & 154.

[77] *See, e.g.*, Doc. 131, p. 6 (arguing that three homes should not be included in the loss valuation because they were primary residences of three co-conspirators); Doc. 155, p. 14 (same).

[78] *See* Docs. 121 & 123.  Alam claims that counsel failed to timely object, but the record does not reflect the submission of any objections in an untimely manner or that any arguments or objections submitted by defense counsel were not considered because they were untimely.  Doc. 176-4, p. 28.

[79] The report only considered transactions identified in the indictment when calculating the 12-point adjustment.  The report also included a three point downward adjustment for acceptance of responsibility.

[80] *See* Docs. 69, 71, 75, 78, & 82.

adjustment as it was the largest contributing factor to the total offense level and the other alleged inaccuracies were either immaterial or previously admitted as true.

2)      Court's memorandum (Doc. 132)

That the Court quoted statements from the PSR that Alam now alleges are false similarly does not amount to ineffective assistance of counsel.  In its Rule 32(h) notification, the Court identified reasons for a potential upward variance, including: (1) the seriousness of the offense, (2) the nine additional counts relating to the fraudulent scheme, (3) Alam's action in recruiting others, and (4) the fact that the offense "was committed while defendant was on probation from a conviction in this court of essentially the same conduct."[81]   The Court recognized its fourth reason as "especially serious."[82]   Aside from item (3), which Alam swore to be true under oath, the Court did not base its upward variance on any of the facts Alam now disputes.

Litigants do not control the contents of the Court's orders.  There are prescribed ways to communicate disagreements to the Court, and in this case, trial counsel followed the Court's instruction that objections to its memorandum be filed by July 30, 2014, and contain no more than five, double-spaced pages.  Rather than rehash prior arguments, counsel incorporated the defense's prior objections and arguments by reference and utilized the limited space allowed to argue against an upward variance.  Counsel's failure to object to the inclusion of immaterial facts

---

[81] It also noted Alam's apparent disrespect of the law, the thorough planning and deliberate dishonesty required to perpetrate his crimes, the lack of deterrence from his prior conviction, the lack of evidence of a disadvantaged upbringing or poor education, and the need to protect the public from further crimes.  Doc. 132, p. 11.

[82] *Id*. at 12-13.

that did not affect the total offense level or to facts Alam previously represented as true does not fall below an objective level of reasonableness.[83]

       b.    Court rulings

On pages 55-67 of his brief, Alam identifies numerous alleged failures of the Court. He asserts that the Court did not rule on certain arguments and objections and that counsel failed to object to the Court's "remarkably faulty," "arbitrary," and "trivial" rulings. Much of his brief is spent arguing why the Court utilized the wrong method for calculating loss or incorrectly calculated the amount of loss. The purpose of this proceeding is not to reexamine the Court's rulings on these issues,[84] but rather, to examine counsel's actions and whether they fell below an objective level of reasonableness resulting in prejudice to Alam.[85]

Trial counsel repeatedly objected to the method of calculation as well as to the amount of loss determined for each property included in the total amount of loss.[86] The Court rejected counsel's methodology arguments and largely overruled counsel's objections relating to specific calculations.[87] Even if the Court inadvertently failed to rule on an objection, contrary to Alam's assertions, defense counsel filed a response to the Court's Sentencing Memorandum and Rule

---

[83] Additionally, because the Court did not rely on the facts Alam disputes, Alam cannot meet the prejudice prong of *Strickland*.

[84] The Court recognizes that § 2255 may allow a petitioner to attack a Court's rulings under limited circumstances. *See, e.g.*, *United States v. Garcia*, 2011 WL 4688850, at *1-2 (D. Kan. 2011). Alam does not allege such circumstances to be present and the Court finds that no such circumstances exist here.

[85] *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994) (recognizing § 2255 motions to vacate "are not available to test the legality of matters which should have been raised on direct appeal.").

[86] *See* Docs. 123, 124, 128, 131, 134, 155, & 156.

[87] *See* Docs. 129, 132, 155, & 156.

32(h) Notice incorporating all of the defendant's prior objections,[88] and stated on the record at the sentencing hearing that counsel wanted "to make it clear that we aren't giving up any of the arguments that were raised concerning sentencing."[89]  Especially in light of the page limit for any response to the Court's memorandum, it is not unreasonable for counsel to incorporate by reference arguments already presented to the Court and advocate alternative arguments in favor of his client.

### c.     Failure to object to improper calculation of restitution

Alam argues that counsel failed to recognize and correct the Court's allegedly incorrect calculation of the amount of restitution, and due to these errors, Alam received a higher adjustment and total offense level under the Guidelines.  Counsel did not act unreasonably.

### 1)     Total loss vs. restitution

Loss and restitution are not always equivalent.  The calculation of total loss under the Guidelines includes consideration of losses caused not only by the conduct underlying the offense of conviction but also other "relevant conduct."[90]  Restitution, on the other hand, is ordered "only for the loss caused by the specific conduct that is the basis of the offense of conviction."[91]  Accordingly, a district court may consider a wider range of conduct and losses for purposes of sentencing than it may include in a restitution order.

---

[88] Alam's brief misrepresents counsel's actions by alleging that the response to the Court's memorandum stated: "This pleading will not address issues previously raised."  Doc. 176-4, p. 60.  This quote is incomplete.  The response continued and stated that "issues previously raised" in the defendant's various filings, "are hereby incorporated by reference as though more fully set out herein."  Doc. 134, p. 1.

[89] Doc. 156, p. 6.

[90] *See* U.S.S.G. § 1B1.3 (2013); *United States v. Griffith*, 584 F.3d 1004, 1011-12 (10th Cir. 2009).

[91] *Hughey v. United States*, 495 U.S. 411, 413 (1990).

In his briefing, Alam incorrectly assumes that the amount of restitution ordered, $258,309.21, governs how many "points" are added for purposes of determining the applicable sentencing range, and attacks the calculations allegedly utilized to arrive at this number. But, it is the amount of total loss that governs the adjustment to the base offense level for purposes of sentencing—not the amount of restitution ultimately ordered.

At the time of Alam's sentencing, U.S.S.G. § 2B1.1 called for a 12-point adjustment for a loss between $200,000 and $400,000, and a 14-point adjustment for a loss between $400,000 and $1,000,000.[92] In determining the total loss, the Court considered the loss incurred on six properties purchased by Alam's co-conspirators as relevant conduct, as well as the loss incurred on the seven properties included in the factual basis of the plea agreement as part of the fraudulent scheme. Based on evidence submitted by the Government and Alam's objections thereto, the Court calculated the total loss on the 13 properties at $485,192.70.[93] Thus, under the 2013 Guidelines, 14 points were added to the total offense level, resulting in a total offense level of 22. The Court did not order restitution on the total amount of loss,[94] nor did it base its restitution order on the amount of loss summarized in Doc. 130-1. Instead, it simply ordered that Alam be jointly and severally liable for the amount each co-defendant had previously been ordered to pay in restitution.[95]

---

[92] Alam incorrectly cites the Guidelines in effect at the time of his briefing, not at the time of his sentencing. *Compare* U.S.S.G. § 2B1.1 (2013) *with* U.S.S.G. § 2B1.1 (2016).

[93] The Court utilized the calculations submitted by the Government (summarized in Doc. 130-1), reduced in accordance with the defense's objections that were sustained. *See* Doc. 132.

[94] *See* U.S.S.G. § 1B1.3 (2013); *Griffith*, 584 F.3d 1004.

[95] *See* Doc. 121, p. 28; Doc. 135. Interestingly, this method of calculating restitution benefitted Alam. Alam pleaded guilty to fraudulent activity associated with two properties purchased by co-defendant Dykes—1244 S. Emporia and 2208 S. Glendale. Dykes, however, only pleaded guilty to activity associated with S. Glendale, and

As discussed above, Alam's counsel objected to the specific loss calculations for each of the 13 properties included in the calculation, and made clear that Alam did not waive any of his arguments regarding sentencing. Nothing in the briefing, record, or files of this case supports Alam's claim that counsel acted unreasonably or failed to object to the Court's calculations.

2)     Challenges to the restitution order alone

A § 2255 motion provides relief to a prisoner in custody "claiming the right to be released"—it does not allow parties to challenge the proper calculation of restitution where the calculation of restitution did not also affect the prison sentence.[96] Alam identifies numerous alleged inconsistencies, errors in calculating restitution, and errors in identifying the proper party to receive restitution, and argues that he received ineffective assistance of counsel due to the alleged errors. To the extent his alleged errors affect only the proper amount of restitution, he cannot pursue those arguments here.[97]

---

his restitution order did not include losses attributed to S. Emporia. Because Alam's restitution order reflected the restitution ordered in his co-defendant's cases, Alam's order does not include losses relating to S. Emporia.

[96] *See Hardesty*, 1997 WL 815381, at *8 (recognizing § 2255 "is not a proper vehicle to bring claims of improper restitution sentences, even when such claims are tainted by the alleged ineffective assistance of counsel"). The Court recognizes that in some cases restitution and loss may be calculated at the same time using the same figures and methodology, and thus arguments attacking restitution also inherently challenges the loss determination. That, however, is not the case here where the Court separately determined the amount of loss for each property and then adopted the restitution ordered in the co-defendants' cases for the amount of restitution. Thus, Alam's challenges to calculations not reflected in Doc. 130-1 are irrelevant to loss and not properly pursued here.

[97] For example, Alam argues that the PSR identifies the incorrect recipients of restitution, argues that lenders should not receive restitution because they received compensation from insurance, and argues that counsel should have argued that restitution should be reduced by the lenders' culpability in authorizing loans. For purposes of total loss, it is irrelevant whether the Court misidentified the party to receive restitution or whether a lender received insurance proceeds. Further, the Court explicitly told counsel, "your client is not getting any credit towards a sentence because Countrywide and Bank of America were involved in this because he knew when he was doing this that he was committing fraud." Doc. 155, p. 20.

d.    Failure to present legal arguments based on Kansas mortgage law

Alam argues that trial counsel failed to craft a more detailed argument under K.S.A. § 60-2414(k) regarding the disposition of property under Kansas law and the proper method for calculating loss.  Again, much of Alam's argument seems more geared toward re-litigating the Court's findings as opposed to his counsel's failure to pursue arguments.  Indeed, trial counsel repeatedly asserted arguments based on the disposition of the subject houses after the buyers defaulted, including citing directly to K.S.A. § 60-2414(k).[98]  Even if counsel raised this argument in a "timid and incurious manner,"[99] as alleged, counsel's actions did not fall below an objective standard of reasonableness.  Counsel's focus on different loss calculation arguments is entitled to a strong presumption of reasonableness, and it is assumed "that he did so for tactical reasons rather than through sheer neglect."[100]  Alam cannot overcome this presumption based on his current allegations and the record.

Alam also faults counsel for not objecting to the Government's characterization that the lenders were "required" to bid on the properties at the sheriff's sale.  The record shows that the Government did not represent that the lenders were legally mandated to bid.  In context, it appears that use of the term "required" by the Government meant that in order to protect their

---

[98] *See* Docs. 123, 124, 128, 131, & 155.

[99] Doc. 176-4, p. 43.  In short, counsel argued that after the buyers/co-conspirators defaulted on the loans the properties were sold at auction, the lenders bid the full amount of the loans, and the lenders received a check for the full amount of the defaulted amount, therefore, the lenders did not suffer a loss.  Trial counsel argued that the third party sale (occurring after the sheriff's sale) should not be used to calculate the actual loss suffered by the lenders, that under Kansas law the sheriff's sale "would be controlling for the purpose of defining the ultimate sale that disposes the collateral and satisfies the loss/judgment," and stated that under K.S.A. § 60-2414(k), "Kansas does not allow second sale for the purpose of foreclosure and loss matter."  Doc. 131, p. 5.

[100] *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

interests, the lenders needed to control the subsequent disposition of the collateral. Alam cannot show that counsel's failure to object on this ground was unreasonable.

In addition to advocating for the application of K.S.A. § 60-2414(k), counsel presented alternative arguments that would have resulted in much lower loss calculations and retained an expert to prepare a report to support one alternate argument. Ultimately, the Court adopted the Government's approach, supported by Tenth Circuit precedent,[101] and considered the amount the lenders subsequently sold the houses for in calculating the loss. A review of the briefing, records, and files in this case conclusively shows that Alam's representation did not fall below an objective standard of reasonableness.

      e.      Failure to call witnesses, cross-examine the declarants of out-of-court statements, and object on the basis of insufficiency of evidence, and alleged violations of the confrontation clause

Alam's arguments that his counsel acted unreasonably in allowing the Government to submit inadmissible hearsay to establish the amount of loss and allowing Alam's confrontation clause rights to be violated at the sentencing hearing lack merit. The Federal Rules of Evidence do not apply in sentencing, and "[t]he Supreme Court has made clear that the constitutional requirements mandated in a criminal trial as to confrontation and cross-examination do not apply at non-capital sentencing proceedings."[102] Accordingly, Alam's objections on the basis of

---

[101] *See* Doc. 132; *Washington*, 634 F.2d 1180. Alam faults counsel for not requiring that the Court address the K.S.A. § 60-2414(k) argument in detail. In adopting the approach championed by the Government, the Court necessarily rejected the defense's conflicting argument based on Kansas mortgage laws.

[102] *United States v. Beaulieu*, 893 F.2d 1177, 1180 (10th Cir. 1990) (citing *United States v. Sunrhodes*, 831 F.2d 1537, 1543 (10th Cir. 1987); *Williams v. Oklahoma*, 358 U.S. 576 (1959)).

admissibility of the Government's exhibits and on the confrontation clause were properly overruled, and any alleged inadequacy of counsel relating to these claims is also meritless.[103]

Alam also argues that trial counsel unreasonably agreed with the Government that neither party would be required to call their respective witnesses to the stand.  According to Alam, if the Government's witness had testified, the Court would have learned that the Government's proof regarding loss relied on out-of-court statements, that these statements were unreliable (missing dates and other important details), and that no victims had submitted any claims of loss.  This, according to Alam, proves that the Government's claim of total loss lacked legal foundation.

First, whether the Government's proof relied on out-of-court statements is irrelevant as the Federal Rules of Evidence do not apply at sentencing.[104]  Second, counsel contested the reliability of the evidence submitted by the Government by arguing that the exhibits failed to identify the amount of default for some properties, lacked dates, originated from non-lender entities, were prepared with information not provided by the lender, contained inaccurate information, had unknown authors, and were missing pages and information.[105]

Third, Alam's contention that cross-examining the Government's witness would have revealed "the absence of any claim of loss submitted by the victims," rendering the Government's claim regarding the amount of loss without "legal foundation," relies upon a misunderstanding of the law.  As discussed below, victims are not required to submit any "statement" or "affidavit" for purposes of determining loss, and the absence of an affidavit from

---

[103] *United States v. Ramirez*, 43 F. App'x 358, 362 (10th Cir. 2002).  *See also*, Doc. 87, p. 3.

[104] *Sunrhodes*, 831 F.2d at 1544.

[105] *See* Docs. 123 & 131.

-26-

the lenders does not mean that no loss occurred.[106]  Because the Federal Rules of Evidence did not apply at Alam's sentencing the Government was not required to establish foundation before the Court could consider its evidence.  Regardless, counsel already knew that no victim loss statements had been provided by the Government as counsel referred to this fact in briefing.[107]

Counsel's agreement with the Government not to call their respective witnesses to the stand is a tactical decision entitled to substantial deference.[108]  By not requiring the Government to present its witness, defense counsel secured an agreement that the defense also would not have to subject its expert witness to cross-examination.  Further, had the Government's witness taken the stand, he may have been able to explain the discrepancies identified and argued by counsel.  Alam has not asserted allegations sufficient to suggest that counsel's decision not to require the Government to put its witness on the stand fell below an objective standard of reasonableness, and his arguments regarding prejudice are hypothetical and conclusory.[109]

f.    Failure to compel *Brady* material

Alam alleges his right to a fair trial was violated by the Government's improper withholding of victim statements in the sentencing proceedings in violation of *Brady v. Maryland*,[110] as well as trial counsel's failure to compel the Government to disclose these statements.  Specifically, he argues that the Government had an obligation to obtain statements from the lender-victims, that it did obtain such statements, that it failed to produce the

---

[106] 18 U.S.C. § 3664(g)(1).

[107] Doc. 131, p. 5.

[108] *Premo*, 562 U.S. at 126.

[109] *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (recognizing that a "wrong" decision is insufficient to establish a claim of ineffective assistance of counsel—the decision must also have been unreasonable).

[110] 373 U.S. 83 (1963).

statements, that counsel failed to compel the production of the statements, and had counsel obtained the statements, the Court would not have reached the same conclusion concerning the amount of loss and the sentencing and restitution calculations.[111]  Alternatively, Alam argues that if the Government failed to obtain statements then it violated the plea agreement.  Alam's contentions are legally flawed, speculative, and rely on hypothetical evidence.  The briefing, record, and files in this case conclusively show that Alam cannot meet either prong of *Strickland*.

Alam's argument that the Government withheld evidence rests on the faulty premise that the lenders had a duty to provide victim statements.  Citing paragraph 10 of the plea petition, Alam asserts that the Government had an obligation to obtain victim impact statements. Paragraph 10, however, states that Alam was "informed that the court may order [him] to make restitution in compliance with 18 U.S.C. § 3663 and § 3664."[112]  Nothing in the petition, plea agreement, § 3663, or § 3664 requires victims to provide statements.  Indeed, "[n]o victim shall be required to participate in any phase of a restitution order."[113] Section 3664 merely *allows* victims the opportunity to submit an affidavit identifying losses.

Further, nothing in the record reflects that any statements were withheld.  Instead, the record suggests that the Government produced the evidence relating to loss.[114]  It was not unreasonable for counsel not to compel the production of documents there was no reason to

---

[111] *See* Doc. 176-4, pp. 76-84; Doc. 176-5, pp. 85-87.

[112] Doc. 86, p. 4.

[113] 18 U.S.C. § 3664(g)(1).

[114] *See* Doc. 130, p. 2, n.2 (noting that the materials used to prepare the loss calculation were provided in discovery); Doc. 155, p. 9 (referencing "the discovery provided by the Government" during evidentiary hearing).

believe existed.  Further, Alam fails to suggest how he has been prejudiced by his counsel's failure to compel the production of these hypothetical documents.[115]

Alam's assertion that the Government's failure to produce witness statements under § 3664 violates his due process rights similarly fails.  "To establish a *Brady* violation, the defense must prove that the prosecution suppressed the evidence, the evidence would have been favorable to the accused, and the suppressed evidence was material."[116]  The failure to satisfy any of these requirements is fatal.  Alam has failed to assert any facts to suggest the Government withheld evidence, let alone evidence that would have been favorable and material.

g.    Continuances of the sentencing date

Alam contends that trial counsel unreasonably and unilaterally requested continuances of the sentencing hearing.  He argues that because a court may not engage in an upward variance without providing a Rule 32(h) notice, and because no Rule 32(h) notice had been issued at the time of the requests, he would not have received an upward variance had the sentencing hearing occurred as scheduled.  In evaluating claims of ineffective assistance of counsel, courts must "eliminate the distorting effects of hindsight" and must view an attorney's actions "from counsel's perspective at the time."[117]

Counsel sought two continuances.  Counsel requested the first extension on January 10, 2014, 17 days before the sentencing hearing, in order to obtain an expert to dispute the amount of

---

[115] *See Thacker v. Workman*, 678 F.3d 820, 843-44 (10th Cir. 2012) (citations omitted) (noting the Supreme Court's caution "against too readily concluding that counsel was ineffective" and noting that "ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect").

[116] *Fero v. Kerby*, 39 F.3d 1462, 1472 (10th Cir. 1994) (citation omitted).  "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)) (alteration in original).

[117] *Bell v. Cone*, 535 U.S. 685, 698 (2002) (citation omitted).

loss included in the draft PSR, to submit objections to the draft report, and because counsel had a previously scheduled trial on the same day as the sentencing hearing.  In granting the motion, the Court found that the motion was "not made for the purpose of delay, or for any other improper motive, but [was] instead made based upon a good faith belief by defense counsel that such a continuance is necessary," and that "failure to continue the sentencing . . . would greatly prejudice[] the Defendant."[118]  The second request, joined by the Government and the USPO, cited as grounds for the request the complexities in determining the proper amount of loss and the parties' attempts to resolve issues prior to finalizing the PSR.

The USPO submitted the final PSR to the Court on March 28, 2014.  On April 2, 2014, the Court cancelled the sentencing hearing, and after receiving the parties' briefing regarding the defense's objections to the PSR, scheduled an evidentiary hearing relating to the PSR.  After ruling on the defense's objections, the Court issued a Rule 32(h) notice.

Defense counsel sought continuances to develop arguments that would reduce Alam's prison sentence and to try to obtain an agreement favorable to his client.  That such an agreement did not materialize does not mean that counsel acted unreasonably in requesting continuances. Viewing counsel's actions at the time of the requests shows that counsel acted reasonably.

Further, nothing in the record suggests that the Court would not have issued a Rule 32(h) notice if the sentencing hearing had occurred as scheduled.  The reasons the Court provided for varying from the sentencing guidelines were known at the time of the first request for a continuance, and Alam cannot identify any subsequent development to support his claim that the

---

[118] Doc. 114.

Court would not have issued a Rule 32(h) notice and engaged in an upward variance. Rather, the record and files in this case conclusively show that the result would not have been different.[119]

       h.     References to Alam's ethnicity, criminal justice classes, and bankruptcy

The USPO reported that Alam was born in Bangladesh, has family members residing in Bangladesh, lived in Bangladesh until he moved to Wichita for college, and that his primary language is Bangla, but he is fluent in English. The report also stated that "Alam recruited sellers from his homeland of Bangladesh" as part of the fraudulent scheme.[120] Alam alleges that trial counsel's failure to object to the inclusion of his and his partners' ethnic background as prejudicial and unwarranted constitutes ineffective assistance of counsel.

Alam does not identify how revealing this information to the Court prejudiced him, and nothing in the Court's memorandum or in the record and files of this case suggests that Alam suffered any bias or prejudice because his ethnicity was included in the PSR. The only mention of his ethnicity by the Court appeared in a section of the Court's opinion that quoted nine paragraphs from the PSR verbatim.[121] This, in light of the directive that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," demonstrates that counsel did not act unreasonably.[122]

---

[119] Alam also did not spend more time in custody as a result of the continuances. *See* Doc. 156, p. 17.

[120] Doc. 121, p. 10.

[121] Doc. 132, pp. 2-3.

[122] 18 U.S.C. § 3661.

Alam also faults his counsel for not objecting to the Court's reference to Alam's studies of criminal justice in college or the fact that he took Chapter 13 bankruptcy.[123]  Neither of these facts affected the Court's decision regarding sentencing, discussed above.  Alam does not explain why counsel should have objected to these topics; nor can the Court see any reason that counsel should have objected.  Counsel did not act unreasonably in refraining from objecting to the Court's aside and instead focusing on issues affecting his client's potential prison term.

i.     The Government's failure to comply with Fed R. Crim. P. 12.4

The Court cannot see and Alam does not explain how the Government's alleged failure to comply with Fed. R. Crim. P. 12.4 had any influence on Alam's decision to plead guilty or on the sentence he received.  The purpose of Rule 12.4 "is to alert the court to the fact that a possible ground for disqualification might exist" and "to assist judges in determining whether they must recuse themselves because of a 'financial interest in the subject matter in controversy.' "[124]  Alam does not attempt to show how the Government's alleged failure to comply with Rule 12.4 prejudiced him.  Accordingly, he cannot meet the *Strickland* test for ineffective assistance of counsel.

j.     Incorrect advice regarding supervisory release

The plea agreement incorrectly stated that supervisory release would be no more than three years.  The PSR, however correctly identified the maximum supervisory release term to be no more than five years.  Alam argues that counsel's failure to object to the inclusion of a five year term of supervisory release in the PSR constitutes ineffective assistance of counsel.

---

[123] The Court opined that "[b]ased on defendant's conduct, there is very little evidence that he respects the law.  (Interestingly, defendant minored in criminal justice in college).  That is not to say that he has hesitated to avail himself of its protections: he took Chapter 13 bankruptcy."  Doc. 132, p. 12.

[124] Fed. R. Crim. P. 12.4 advisory committee's note to 2002 adoption.

Alam does not allege that he did not knowingly enter the plea agreement on this ground. Indeed, Alam explicitly challenges his decision to plead guilty, but does not suggest that the incorrect recitation of the maximum supervisory release term in the plea agreement renders his plea invalid. Nor does he allege that he would not have pleaded guilty had the plea agreement correctly identified the maximum term of supervisory release. And, he does not allege that he wished to withdraw his guilty plea before sentencing after learning of the correct maximum supervisory release term. As Alam has not alleged that but for his counsel's alleged error he would not have pleaded guilty, he cannot satisfy the prejudice requirement of *Strickland*. Likewise, since Alam does not allege that he would have changed his decision to plead guilty, any error by the Court in failing to properly inform Alam of the maximum term of supervisory release is harmless.[125]

k.    Cumulative effect of counsel's various failures

Alam argues that even if no specific deficiency constitutes ineffective assistance of counsel, that the cumulative effect of his counsel's representation constitutes ineffective assistance of counsel. In support, he cites various alleged miscalculations relating to the amount of restitution.[126] The Court has thoroughly reviewed Alam's allegations and finds that they are

---

[125] *United States v. Wright*, 930 F.2d 808, 809-10 (10th Cir. 1991); *United States v. Barry*, 895 F.2d 702, 702 (10th Cir. 1990).

[126] Doc. 176-5, pp. 137-41. Alam's claim that counsel did not argue that the Classen property should not be included in the loss calculation is false. Alam's argument that the Government agreed to a lower loss amount relating to the Lulu property than ultimately adopted is false—he improperly focuses on the loss calculation proposed in the PSR and not the loss calculation actually utilized by the Court. Alam's arguments regarding the Glendale property rest on the faulty premise that the total loss should be reduced by insurance payouts. Alam incorrectly argues that his counsel failed to require the Court to rule on objections—this assertion is addressed above and does not constitute ineffective assistance of counsel. Finally, counsel's failure to object to the inclusion of the Hildreth property was not unreasonable as Alam admitted to providing false loan application information regarding this property under oath. And, even if this property was excluded from the total loss, it would not have changed the offense level.

unsupported, meritless, irrelevant, and contradicted by the briefings, records, and files in this case. Counsel's conduct did not fall outside the wide range of reasonable professional assistance.[127]

       *5.*    *The Court orders further briefing regarding the defense's expert report.*

Alam argues that trial counsel withheld material evidence from the Government by failing to timely provide an expert report to the Government.[128]  According to Alam, counsel retained Jim Hudson as an expert to argue that the "second sale of the subject houses by the lenders was not commercially reasonable, and offer an expert opinion on what the market value was for each one of those houses at the time of the foreclosure as an alternative in determining the credit against loss."[129]  Alam claims that the Government agreed to reduce the offense level by four points based on this argument, so long as Hudson submitted his findings in writing.  He further claims that the USPO agreed to follow this compromise once finalized.  After receiving the Hudson report on March 18, 2014, counsel allegedly failed to provide the report to the Government in time to have the point reduction reflected in the March 28, 2014, PSR.  Alam argues that but for his counsel's failure, he would have received a lower total offense level.

Although it is referenced at the evidentiary hearing and by the Government in its response to the defendant's objections to the PSR,[130] it is unclear when the Hudson report was provided to the Government or the Court.  It is also unclear whether the Government agreed to

---

[127] As discussed in the next section, the Court has ordered briefing regarding Alam's claim that trial counsel withheld an expert report from the Government.  If the Court's opinion as to the "cumulative effect" of counsel's actions is affected by the Court's determination regarding the expert report, the Court will reconsider this argument.

[128] Doc. 176-5, pp. 88-97.

[129] *Id.* at 88.

[130] *See* Doc. 125, p. 2; Doc. 155, p. 5.

reduce the total amount of loss, or whether the Government agreed to consider reducing the amount of loss upon receipt of Hudson's report. While Alam alleges that the Government conditionally agreed to a four-point reduction, the attachments to Alam's motion suggest that his counsel merely opined that there was a 50/50 chance that the Government would accept the arguments based on Hudson's report.[131]

The Government did not respond to this argument, and the Court is not prepared to grant, deny, or hold an evidentiary hearing on this motion until this issue is fully briefed. Accordingly, the Government has 21 days from the date of this Memorandum and Order to submit a response to this argument. Its response is limited to 10 double-spaced pages. Alam may file a reply to the Government's response within 21 days of receiving the Government's response. Alam's reply is limited to 10 double-spaced pages. Excluding evidence attached to and discussed in the parties' briefs, the Court will not consider any content extending beyond the tenth page of either party's brief.

**B.    Alam received effective assistance of appellate counsel.**

The standard enunciated in *Strickland* also applies to claims of ineffective assistance of appellate counsel. Accordingly, Alam must show appellate counsel acted "objectively unreasonable" and that there is "a reasonable probability that, but for his counsel's unreasonable [actions], he would have prevailed on his appeal."[132] Alam argues that appellate counsel failed to make certain arguments on appeal, to file a reply to the Government's response brief, and to inform Alam of the Tenth Circuit's decision denying his appeal. A review of the briefing, files,

---

[131] Doc. 176-5, p. 91; Doc. 176-6, p. 84.

[132] *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citation omitted).

and records conclusively shows that Alam cannot meet his burden to prove that he received ineffective assistance of appellate counsel.

### 1.    *Appellate counsel did not unreasonably fail to pursue legal arguments.*

An appellate attorney "need not advance *every* argument, regardless of merit, urged by the appellant," but must "be available to assist in preparing and submitting a brief to the appellate court . . . and must play the role of an active advocate, rather than a mere friend of the court."[133]  The process of " 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."[134]  The Supreme Court has recognized that "[l]egal contentions, like the currency, depreciate through over-issue" and the pursuit of multiple errors will often only "dilute and weaken a good case and will not save a bad one."[135]  "A brief that raises every colorable issue runs the risk of burying good arguments."[136]  Thus, "[e]ffective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed."[137]  "Declining to raise a claim on appeal is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court."[138]

---

[133] *Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (emphasis in original) (citations omitted).

[134] *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)). Experienced advocates recognize "the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones*, 463 U.S. at 751-52.

[135] *Jones*, 463 U.S. at 752 (citations omitted).

[136] *Id*. at 753.

[137] *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017).  *See also Loggins v. Cline*, 568 F. Supp. 2d 1265, 1272 (D. Kan. 2008) ("Because an advocate has a duty to support the client to the best of his ability, it may be necessary for counsel to raise only the strongest claims.").

[138] *Davila*, 137 S. Ct. at 2067.  *See also Jones*, 463 U.S. at 751 (recognizing that a defendant does not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points").

Alam's criticisms of appellate counsel predominately relate to counsel's alleged failure to pursue certain arguments. He alleges counsel should have: (1) included legal arguments based on Kansas foreclosure law, specifically K.S.A. § 60-2414(k); (2) objected to the inclusion of certain houses in the loss calculation based on incorrect facts; (3) contested the Court's consideration of inadmissible hearsay and unreliable documents in calculating the amount of loss, and pointed to other factual inaccuracies in the record that affected the loss calculation; (4) argued that Alam's confrontation clause rights were violated by the Court's reliance on documents submitted by the Government to prove the amount of loss; and (5) argued that the Court's consideration of his college classes and bankruptcy were improper.[139]

Appellate counsel focused the appellate brief on key issues affecting Alam's prison sentence, including whether the Court adopted an incorrect loss calculation methodology, and whether the Court improperly applied an upward variance. Counsel did not unreasonably fail to pursue the arguments identified by Alam.

      a.      Failure to include legal arguments based on K.S.A. § 60-2414(k)

Alam claims that he directed appellate counsel to include an argument specifically relating to K.S.A. § 60-2414(k)'s prohibition on "second sales," and his counsel unreasonably failed to follow his instruction. A review of the attachments to Alam's motion, however, reveals that Alam told counsel that he would defer to counsel's opinion regarding what to argue on

---

[139] *See* Doc. 176-5, pp. 142-166.

appeal.[140]  Even if Alam had not explicitly authorized his attorney to utilize discretion, counsel is not required to pursue every nonfrivolous argument requested by the client.[141]

A review of Alam's allegations confirms that counsel acted strategically in deciding not to refer to § 2414(k).[142]  Alam alleges that counsel originally included an argument based on § 2414(k), but removed the argument before filing.  The fact that counsel prepared an argument under § 2414(k) and decided to remove it demonstrates that counsel consciously and purposefully removed the argument.  Counsel's tactical decision to remove this argument is entitled to a strong presumption of reasonableness, and Alam has not presented allegations to support his claim that counsel acted unreasonably.[143]

Although counsel did not cite directly to § 2414(k), counsel asserted an argument based on Kansas foreclosure law.  Counsel argued that "K.S.A. 60-2401 et seq. requires that once a foreclosure judgment is granted, the collateral must be disposed of through a Sheriff's Auction in a commercially reasonable manner," that the " 'Credit against Loss' is determined by the purchase price at the Sheriff's sale," which Kansas requires to be "commercially reasonable," and the "Court erred when it failed to use the foreclosure sale price, replacing it with a severely discounted price solely controlled by and unilaterally manipulated by the lending institution."[144]

---

[140] *Id*. at 148 (requesting that counsel make arguments that "are not out of place"); Doc. 176-6, p. 100 ("I will continue to rely on you to decide what is in the brief.").

[141] *Evitts*, 469 U.S. at 394.

[142] Doc. 176-5, pp. 149 & 154.

[143] *Strickland*, 466 U.S. at 689 (citations omitted).

[144] Brief of Defendant-Appellant, *United States v. Alam*, 622 F. App'x 742 (10th Cir. 2015) (No. 14-3169).

Counsel did not unreasonably fail to cite to § 2414(k) as neither the text of § 2414(k) nor the caselaw discussing it suggest that § 2414(k) commands the outcome Alam suggests.[145]

Additionally, Alam's proposed arguments appear meritless in light of Supreme Court and Tenth Circuit precedent.[146]  In *Washington*, relied upon by the Tenth Circuit in denying Alam's appeal, a mortgage broker assisted a buyer in fraudulently obtaining mortgages on three homes in Overland Park, Kansas.  The buyer of the three houses defaulted on the loans, resulting in foreclosure proceedings, and "each property was auctioned at a sheriff's sale and acquired by the lender or an assignee and then resold on the open market."[147]  The Tenth Circuit held that the net loss should be determined by subtracting the sales price that the lender received from selling the property from the outstanding balance on the loan.[148]

Shortly before his appeal, the Supreme Court rejected an argument similar to Alam's regarding restitution under 18 U.S.C. §§ 3663A-3664.   In *Robers*, the appellant argued for a lower restitution determination on the basis of state mortgage law principles.[149]  The Supreme Court recognized that the relevant federal statute "does not purport to track the details of state mortgage law" and the Court "would not find them sufficient to change [its] interpretation."[150] Although *Robers* dealt with the calculation of restitution, it is instructive as it also involved a

---

[145] *See, e.g., In re Ruck*, 451 B.R. 128, 132 (D. Kan. 2011) ("[A] Kansas mortgage that has been reduced to judgment cannot be foreclosed again."); *Lenexa State Bank & Trust Co. v. Dixon*, 559 P.2d 776, 221 Kan. 238 (1977); *McGraw v. Premium Finance Co. of Mo.*, 637 P.2d 472, 7 Kan. App. 2d 32 (1981); *First Tribune Ins. Agency, Inc. v. Turner*, 324 P.3d 1153 (Kan. Ct. App. 2014) (unpublished).

[146] *Robers v. United States*, 134 S. Ct. 1854 (2014); *Washington*, 634 F.3d 1180.

[147] *Washington*, 634 F.3d at 1182.

[148] *Id.* at 1184.

[149] *Robers*, 134 S. Ct. at 1859 (rejecting argument that " 'principles' of state mortgage law 'confirm that the return of mortgage collateral compensates a lender for its losses.' ").

[150] *Id.*

mortgage-fraud scheme, and like §§ 3663A-3664, U.S.S.G. § 2B1.1 does not purport to track state mortgage laws.  One of the purposes of the Guidelines is to create "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders."[151]  Adopting Alam's argument would contravene this purpose and result in the loss calculations for the same federal crime to vary, potentially significantly, based upon each state's foreclosure laws.

In light of caselaw regarding K.S.A. § 60-2414(k), *Washington*, *Robers*, and the records and files in this case, it is clear that counsel did not act unreasonably in declining to argue that K.S.A. § 60-2414(k) prohibits a federal district court from considering a lender's disposition of property after acquiring it at a sheriff's sale.

> b. Failure to object to the inclusion of properties in the loss calculation

Alam argues that several properties should not have been included in the total loss calculation because he did not act fraudulently in relation to these properties, and criticizes appellate counsel for not objecting to the inclusion of the properties in the total loss amount.

With regard to the properties that Alam admitted under oath were part of his fraudulent scheme, appellate counsel did not act unreasonably in not contesting their inclusion in the loss calculation.  As discussed above, Alam has not asserted facts sufficient to overcome the "formidable barrier" and "strong presumption of verity" clothing his prior sworn statements. Further, he does not allege that he told appellate counsel that he pleaded guilty involuntarily, or otherwise provided counsel with reason to question the accuracy of his prior sworn statements.

---

[151] U.S.S.G. Ch. One, Pt. A, Subpt. 1 (2013).

Alam also claims that the Classen property should not have been included in the loss calculation because the co-defendant securing the loan for Classen resided at this property. The Court rejected trial counsel's argument that since a co-defendant resided at one of the several properties purchased pursuant to the fraudulent scheme that the house should be excluded from the total loss calculation. Even if the Court had accepted this argument, however, removing the loss attributed to the Classen property would not have resulted in a lower point adjustment for purposes of sentencing.[152] Further, as discussed below, the standard of review of factual determinations is less favorable to Alam. Appellate counsel's decision to focus on the legal question of the proper loss calculation method was not unreasonable.[153]

c.    Failure to argue that the Court relied on inadmissible and unreliable information and incorrectly calculated loss

Alam faults appellate counsel for not arguing that the Court relied on inadmissible hearsay and unreliable documents in calculating the amount of loss and that the PSR contained inaccurate information regarding the proper restitution amount. As discussed above, the Federal Rules of Evidence do not apply in sentencing, and Alam's arguments regarding the proper amount of restitution are unsupported by the record or would not change the total offense level determined by the Court. As the calculation of restitution is not a proper subject for a § 2255 motion unless it also affects the total offense level, Alam cannot pursue arguments only directed at the calculation of restitution. Alam's allegations regarding the evidence submitted by the

---

[152] *See* Doc. 130-1.

[153] *See Davila,* 137 S. Ct. at 2067; *Smith,* 477 U.S. at 536; *Jones,* 463 U.S. at 752; *Alam,* 622 F. App'x at 744.

Government to support the total loss calculation are discussed in more detail above, and the Court's analysis of these issues with regard to trial counsel equally applies here.[154]

The standard of review applicable on appeal further supports the Court's finding that appellate counsel did not act unreasonably. Unlike the standard of review for analyzing whether the Court applied the correct loss calculation method, which is subject to de novo review, the Tenth Circuit reviews a district court's factual findings under a clearly erroneous standard. Thus, the standard of review for evaluating the Court's calculation of loss is less favorable to an appellant than is the standard of review for evaluating whether the Court utilized the proper loss calculation method.

Application Note 3 to U.S.S.G. § 2B1.1 (2013) recognizes that district courts are "in a unique position to assess the evidence and estimate the loss based upon that evidence" and "need only make a reasonable estimate of the loss." It is not unreasonable for appellate counsel to focus on the issues that an appellate court is more likely to reverse, especially in light of the apparent lack of "clear error" in the record. Given the standard of review and deference afforded to the district court to make a reasonable estimate of the loss, counsel did not act unreasonably in focusing on the proper loss calculation methodology, rather than attempting to rehash objections to the Court's calculation of loss.

Alam also contends that appellate counsel failed to review one of the briefs filed by trial counsel objecting to the specific calculations of loss, and claims this is evidence of ineffective

---

[154] The Court determined the amount of loss for purposes of identifying the appropriate total offense level as $485,192.72, and the amount of restitution as $258,309.21. Many of Alam's allegations of inaccuracy go toward the calculation of *restitution* discussed in the PSR and do not also apply to the calculation of *loss*, derived from Doc. 130-1. Appellate counsel informed Alam that the amount of restitution and amount of loss are not the same, and that the amount of loss determines points for sentencing guidelines. *See* Doc. 176-6, p. 100 (advising that the failure to mitigate the loss might work on a restitution argument, but not when calculating the loss).

assistance of counsel.[155]   That counsel stated he would "look at" referring to arguments previously asserted in another brief is not the same as saying counsel had not reviewed those arguments.  According to the documents Alam attached to his briefing, counsel told Alam he had reviewed the prior briefs.[156]   Nothing in the record supports Alam's claim that appellate counsel failed to review the briefs filed by trial counsel, that appellate counsel acted unreasonably in failing to rehash arguments previously made by trial counsel regarding the correct calculation of loss, or that Alam suffered prejudice as a result.

> d.    Failure to assert confrontation clause violations

As discussed above, Alam did not have a right to confront witnesses in conjunction with the sentencing hearing.  The Court properly denied trial counsel's objection on this ground and appellate counsel acted reasonably in not contesting that ruling.

> e.    Failure to argue that the Court should not have considered Alam's college classes and bankruptcy

Appellate counsel considered Alam's contention that the Court improperly considered Alam's prior college classes in criminal justice and bankruptcy but disagreed that the Court improperly considered these facts.  Rather, he properly informed Alam that these facts were fair for consideration.[157]   Appellate counsel did not act unreasonably in failing to challenge the Court's consideration of Alam's bankruptcy and criminal justice college classes.

---

[155] Alam claims that he asked counsel if there was a reason for "not mention[ing] our response to government's response (Doc. 131) which also disputed many of the principal balances," and that his counsel responded, "Let me look at also referring to doc. 131."  Doc. 176-5, p. 152.

[156] Doc. 176-6, p. 103.

[157] *See* 18 U.S.C. § 3661.

    2.    *Counsel did not act unreasonably in not filing a reply.*

Alam alleges that appellate counsel should have filed a reply to contest the Government's statements that the lenders were "forced to bid and outlay funds at the sheriff's sale" and to point out that the Government misquoted *Robers*. Alam cannot overcome appellate counsel's tactical decision that there was "no need to do a reply brief" as the "key points" had been addressed.[158]

Counsel did not unreasonably fail to address the Government's statement that the lenders were "forced to bid" on the properties, and regardless, Alam did not suffer prejudice. Alam argues that the Government had the "burden to substantiate its claims by showing who or what 'forced' the lenders to purchase the collaterals," and counsel "had a duty to hold the government to that burden."[159] The Court disagrees that counsel's failure to object to the Government's statement constitutes ineffective assistance of counsel. The Government did not claim that the lenders had a legal duty to bid, and nothing in the record reflects that the Court proceeded under the misconception that the lenders had a legal duty to bid. Regardless, Alam did not suffer prejudice as a result of counsel's failure to pursue this point. Nothing in the Tenth Circuit's decision or record suggests that this alleged inaccuracy influenced the Tenth Circuit's decision.

The Court also disagrees with Alam's contention that the "government misquoted" *Robers*. Although the Government cited to *Robers* in making its argument, it did not "misquote" *Robers*. Appellate counsel's decision not to file a reply on this issue was not unreasonable as counsel addressed *Robers* in the appeal brief. Further, nothing in the Tenth Circuit's opinion or record in this case suggests Alam was prejudiced by counsel's failure to file a reply on this point as the Tenth Circuit did not rely upon or even mention *Robers* in its decision.

---

[158] *See* Doc. 176-5, p. 159.

[159] *Id*. at 160.

      *3.*     *Counsel did not unreasonably fail to inform Alam of the Tenth Circuit's decision or assist in filing an appeal.*

Alam's claim that he received ineffective assistance of counsel due to his counsel's alleged failure to inform him of the Tenth Circuit's denial of his appeal and failure to assist him in filing a petition for an en banc hearing is meritless. Alam admits that he received news of the Tenth Circuit's decision from another source on the day the Tenth Circuit issued its decision and that he immediately e-mailed appellate counsel regarding the decision. In response, appellate counsel e-mailed Alam stating, "[a]s I previously advised you and Asif, I am no longer in private practice," recommending Alam retain new counsel and noting that he previously "suggested some names," and apprising Alam of the next steps if he wished to request a "rehearing/hearing en banc" or seek review by the Supreme Court.[160] Appellate counsel did not act unreasonably. Moreover, Alam cannot establish prejudice.

**C.    Alam is not granted a certificate of appealability.**

Appeal from a final decision on a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255 is not permitted unless a circuit or district judge issues a certificate of appealability in accordance with 28 U.S.C. § 2253(c).[161] The Court declines to grant Alam a certificate of appealability in this case because he did not make a substantial showing that he was denied a constitutional right.[162] Alam's arguments did not "raise issues that are debatable among jurists, or that a court could resolve differently, or that deserve further proceedings."[163] Because

---

[160] Doc. 176-6, p. 115.

[161] Fed. R. App. P. 22(b)(1).

[162] *See* 28 U.S.C. § 2253(c)(2).

[163] *United States v. Brown*, 993 F. Supp. 1338, 1343 (D. Kan. 1997); *see also United States v. Taylor*, 454 F.3d 1075, 1078 (10th Cir. 2006).

neither Alam's motion nor the record and files of the case allege the existence of any evidence that lends merit to Alam's claims of ineffective assistance of counsel or violations of due process, further review of Alam's motion is unnecessary as to the issues decided herein.

## IV.    Conclusion

Alam's claims of ineffective assistance of trial counsel and appellate counsel are largely conclusory, unsupported, meritless, irrelevant, or wholly incredible in light of the record. Accordingly, Alam's motion to vacate is denied as to all claims of ineffective assistance of counsel except Alam's claim that trial counsel withheld evidence from the Government. The Court reserves judgment on Alam's claim that trial counsel acted unreasonably in withholding evidence from the Government, resulting in prejudice to Alam, and orders the parties to submit briefing on this issue. The Government is given 21 days from the entry of this Memorandum and Order to file a response on this issue. Alam is given 21 days after receipt of the Government's response to file a reply to the Government's response. Neither party's brief may exceed 10 double-spaced pages, excluding evidence attached as exhibits in support of the parties' briefs. The Court will not consider any argument or briefing extending beyond the tenth page of the parties briefs, whether included in the body of the brief or as an attachment.

Alam's claim that the Government violated his due process rights by withholding evidence in violation of *Brady* is predicated on a faulty understanding of the law. Further, Alam cannot satisfy any of the requirements to establish a *Brady* violation. Accordingly, this claim is dismissed.

**IT IS THEREFORE ORDERED** that Defendant Manjur Alam's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 176) is **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Government is given 21 days to file a response no longer than 10 double-spaced pages regarding Alam's claim that trial counsel withheld evidence from the Government, and Alam is given 21 days after receipt of the Government's response to file a reply no longer than 10 double-spaced pages.

**IT IS SO ORDERED**.

Dated this 17th day of January, 2018.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE